UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHELBY JENSON,                          )
                                        )
               Plaintiff,               )
                                        )
       v.                               )   No. 1:22-cv-1100-JRS-CSW
                                        )
LOWE'S HOME CENTERS, LLC,               )
                                        )
               Defendant.               )

### Order

This is a negligence case.  Shelby Jenson sued Lowe's, as well as two other defendants who have since been dismissed, for damages resulting from a 2020 incident in which several 40-pound bags of fertilizer fell on her while she was shopping at Lowe's in Brownsburg, Indiana.  The trial is set for April 8, 2024.

On January 23, Jenson moved for leave to amend her complaint to include a claim for punitive damages, which was granted by Magistrate Judge Crystal Wildeman. (ECF No. 98.)  Lowe's now seeks reversal of that order, or, alternatively, a trial continuance for the limited purpose of allowing it time to file a motion for summary judgment on the issue of punitive damages.  (ECF No. 110.)  Both requests are **denied**.

While Lowe's motion relating to the Magistrate Judge's ruling was pending, Lowe's filed a Motion for Partial Summary Judgment, (ECF No. 134).  This motion, too, is **denied**.

## I.   Background

The deadline to amend pleadings was November 30, 2022.  (Case Mgmt. Plan 3, ECF No. 29.)   Since the inception of this case, however, there have been several scheduling-related snags and discovery deadline amendments.   Under the original Case Management Plan, the deadline for non-expert witness discovery was April 30, 2023.   This was first amended to October 30, then to November 30, and finally to January 18, 2024, under the Third Amended Case Management Plan.  (ECF No. 77.) In the intervening months, the Parties exchanged discovery requests and responses, as well as significant back and forth regarding objections and amended responses. Additionally, Lowe's changed counsel at the end of October, requiring more time so its new attorneys could get up to speed.

On January 10, the Parties deposed Gregg Johnson, the former assistant manager at the Brownsburg Lowe's.  Several aspects of Johnson's testimony serve as the basis for Jenson's motion to amend her complaint, (ECF No. 88), and her new claim that Lowe's engaged in gross negligence that should result in punitive damages.  First, Johnson testified that while Lowe's safety rules require that heavy palletized merchandise, such as the bags that injured Jenson, be placed on the top shelf only if the boxes holding the merchandise are banded or shrink-wrapped to the wood pallet on which the upright rectangular box sits, the merchandise that injured Jenson was not banded or shrink-wrapped.  (Johnson Dep., ECF No. 110-2 at 32–33.)  This was the first time Jenson learned that the merchandise that fell on her had not been properly stored.  (Pl.'s Br. Supp. Mot. Amend Compl. 2, ECF No. 89.)

Second, Johnson testified regarding some photos he took of the same area the day after the Incident occurred. The photos depicted merchandise on the top shelf in the aisle where the Incident took place. When examining those photos, Johnson stated that he could tell the merchandise on the top shelf was not shrink-wrapped, and that "as far as [he] could tell," the merchandise was not banded, but he never spoke certainly about banding. (Johnson Dep., ECF No. 110-2 at 38.) Jenson argued that, because Johnson did not recall taking any steps to correct the purported violation, Johnson was "unconcerned" with the fact that the merchandise was not shrink-wrapped. (Pl.'s Br. 5–6, ECF No. 89.)

Third, Johnson testified that he did not attempt to find out which particular employee failed to shrink wrap or band the boxes that fell on Plaintiff because he did not know how long the store had stocked the product and there were "a large number of associates" who could have done so. (Johnson Dep., ECF No. 110-2 at 64.) From this, Jenson argued it is "fair" to infer "that Lowe's was not concerned or did not care enough or didn't want to know who was responsible for causing" the Incident because the store did not take action to investigate or discipline that employee. (Pl.'s Br. 7, ECF No. 89.)

Finally, Johnson testified that on "at least a few dozen" occasions he had noticed top stock merchandise was not banded or shrink wrapped to the pallet as required. (Johnson Dep., ECF No. 110-2 at 77.) This answer was in response to a follow up after Johnson answered affirmatively when asked if he had ever noted that a pallet was not shrink-wrapped when he was an assistant manager at the Brownsburg

3

Lowe's, from February 2015 until March 2021.  (*Id.* at 76–77.)  Jenson argued that this provided grounds to amend her complaint because it raises the inference that Lowe's did not experience a one-off error in judgment or instance of negligence but rather "routinely, consciously and deliberately place[d] heavy palletized boxed merchandise on top shelf edges of customer aisles in the store without banding or shrink-wrapping, and thereby needlessly endanger[ed] customers and employees who walk those aisles." (Pl.'s Br. 3, ECF No. 89.)

Magistrate Judge Wildeman granted Jenson's motion, finding that Jenson had good cause for seeking to amend her complaint after the deadline, Lowe's would not be prejudiced by the amendment, and there was no "undue delay, bad faith, [or] dilatory motive" on Jenson's part.  (Order 4, ECF No. 98 (quoting Fed. R. Civ. P. 15(a)(2).)  Lowe's now asks the Court to reconsider that Order.  (ECF No. 110.)

## II.    Rule 72(a) Objection and Motion for Reconsideration

Lowe's makes two arguments in support of its motion: "(1) the Order materially misinterprets the evidence designated in support of Plaintiff's Motion for Leave; and (2) new facts discovered after the briefing by the parties renders the Motion for Leave" futile, unduly prejudicial, and maintained in bad faith.  (Def.'s Mot. Reconsideration 2, ECF No. 110.)

### A. *Legal standard*

Rule 72(a) authorizes the district judge to "modify or set aside any part of" a magistrate judge's order on a non-dispositive motion if it "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  "Clear error is an extremely deferential

4

standard of review, and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

A party's motion for reconsideration should be granted if the "court has misunderstood a party" or "made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherini*, 724 F.3d 965, 967 (7th Cir. 2013).

### B. Discussion

#### i. Johnson is a fact witness

First, Lowe's argues that Magistrate Judge Wildeman's references to Johnson as a "corporate" or "30(b)(6)" deponent are "material misinterpretations of the evidence." (Def.'s Mot. Reconsideration 4, ECF No. 110.)   Lowe's is correct that the characterization of Johnson as a 30(b)(6) deponent in the Order is erroneous: Johnson was not noticed as a 30(b)(6) deponent, and Magistrate Judge Wildeman during Johnson's deposition[1] stated that it was "not a 30(b)(6) deposition" and that Johnson was testifying as a fact witness "within his personal knowledge as to subjects that he has knowledge of." (Johnson Dep., ECF No. 110-2 at 60.)  However, the Court agrees with Jenson that this is a clerical error—nothing in the Order suggests that

---

[1] "Due to the ongoing dispute during the deposition regarding the scope of inquiry, the parties contacted the Magistrate Judge to hear argument on the issue." (Def.'s Mot. Reconsideration 5, ECF No. 110.)

Magistrate Judge Wildeman placed undue weight on or at all misinterpreted Johnson's testimony.

        ii.  Digital photos

Lowe's argues that "new information" regarding the photographs Johnson took the day after the Incident "nullifies Plaintiff's allegations of a post-incident violation, [so] there is no evidence from which the Court or a jury could reasonably determine that Plaintiff's punitive damage claim[] is anything other than futile."  (Def.'s Mot. Reconsideration 7, ECF No. 110.)   The Court disagrees that this is a foregone conclusion.

Johnson initially testified that he could not tell whether the merchandise in the photos taken the day after the Incident was banded to the pallet, (Johnson Dep., ECF No. 110-2 at 38), which Jenson used as the basis for her argument that Lowe's was indifferent to the exact same safety violation that injured her, (*see* Pl.'s Br. Supp. Mot. Amend Compl. 2–3, ECF No. 89).  Later, after looking at digital files and zooming in, Johnson said he "could clearly observe that banding was indeed present."  (Johnson Aff. ¶ 11, ECF No. 110-1.)  Johnson said the printed photographs "did not show the same details I was later able to observe in the digital versions of the same images, [so] I could not testify with certainty during my deposition regarding whether banding was present or not."  (*Id.* ¶ 12.)

Lowe's argues that Jenson "repeatedly represented" that the merchandise in the next-day photos lacked both banding and shrink-wrapping despite "clear uncertainty" about the status of the products.  (Def.'s Mot. Reconsideration 10, ECF

No. 110.)  Lowe's provided Jenson with digital versions of these exhibits for her own examination on February 8.  (Def.'s Mot. Reconsideration 12, ECF No. 110.)  This was four days before Magistrate Judge Wildeman issued her Order.  Lowe's states that it asked Jenson to "advise the Court of her misunderstanding concerning the substance of these photographs," which "disproved her allegations" that the box was not banded and that Lowe's acted with conscious disregard for customers' safety and its own safety policies.  (*Id.* at 13.)

Jenson argues that "it remains uncertain whether this thin transparent material [apparently the banding] actually extends beneath the entirety of the pallet, even upon zooming in at 500%."  (Pl.'s Opp. Mot. Reconsideration 17, ECF No. 115.)  "It is equally plausible," she contends, "that the banding in the images serve to maintain the integrity of the box during transport, rather than being intended for pallet securing."  (*Id.*)  She also contends that even if the merchandise in the photos was banded, there is still enough evidence of other safety violations, which perhaps begs the question why punitive damages were not sought sooner, and that Lowe's own safety policy documents—to the extent they are even relevant here—are inconsistent as to whether shrink-wrapping is always required or whether banding only will suffice.  (*Id.* at 5 nn.3, 4.)  Still, a question of fact has been presented.

Jenson not advising Magistrate Judge Wildeman of Jenson's misunderstanding does not render the motion in bad faith since she maintains that there is a question whether the merchandise was fully secure.  Additionally, these photos were not the

only evidence Jenson pointed to, and Magistrate Judge Wildeman did not rely on these photos in granting Jenson's motion.

iii.   Similar incidents

Lowe's also argues that Magistrate Judge Wildeman's Order was erroneous because "Mr. Johnson did not testify, nor has Plaintiff put forth any evidence whatsoever, that Lowe's has knowledge of any 'similar incidents.'" (Def.'s Mot. Reconsideration 6, ECF No. 110.)   Jenson counters that Lowe's has failed to provide requested discovery on this point, leading her to file a Motion to Compel Discovery, (ECF No. 102), which Magistrate Judge Wildeman has now denied on that point, (Order 11, ECF No. 151).   But, Jenson also referenced several claims she was able to find and stated that one of her own attorneys "had a client with a falling merchandise claim arising out of an Indiana Lowe's." (Pl.'s Opp. 9, ECF No. 115.)   Because these claims were settled, there is not much information in the public record.   However, Lowe's has not sworn "that these falling merchandise lawsuits did not involve human interference," i.e., were the result of improper storage. (*Id.* at 10.)   While Jenson is not entitled to any further discovery at this point, that is not to say that she cannot amend her complaint given the evidence she has obtained from the public record and her own attorney's files.

Lowe's also argues that Jenson incorrectly interpreted Johnson's testimony regarding the frequency with which he saw unbanded, unshrink-wrapped merchandise on the top shelf. (*Id.*)   To support this, Lowe's points to Johnson's errata sheet, on which he stated that when he testified to seeing "at least a few dozen"

violations of the top stock safety procedures, he was referring to his two-decade-long career at Lowe's, not merely his five-year stint as the assistant manager at the Brownsburg store. (*Id.*)

Deposition amendments are permitted, but Rule 30(e) "cannot be interpreted to allow one to alter what was said under oath." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). The original transcript must "be retained so that the trier of fact can evaluate the honesty of the alteration." *Id.* The Seventh Circuit also employs the sham affidavit rule when it comes to deposition errata. *Id.* The sham affidavit rule "permits a judge to disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony." *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020). The Seventh Circuit has "emphasized that, in light of the jury's role in weighing credibility, this rule is to be used with 'great caution.'" *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016) (quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996)). It "applies only when a change in testimony is 'incredible and unexplained,' not when the change is 'plausible and the party offers a suitable explanation such as confusion, mistake, or lapse in memory.'" *Id.* (quoting *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010)). Johnson's alteration is not so "incredible and unexplained" that it warrants disregard. *McCann*, 622 F.3d at 751. However, because it is indeed an alteration, its "honesty" must be evaluated by the factfinder. *Thorn*, 207 F.3d at 389. Further, perhaps a reasonable jury could find that, even if spanning a period of decades, it constituted gross negligence. This is clear: Johnson's

testimony should be interpreted by a jury, not by the Court. This is not new information that the Court can now consider.

### iv. Magistrate Judge Wildeman's Order stands

In her complaint, Jenson must allege enough facts that, if true, support a claim for gross negligence and the potential award of punitive damages. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not necessary that she prove the existence of willful and wanton conduct by any evidentiary standard at this point, and neither the digital photos nor Johnson's errata sheet render Jenson's new allegations futile or in bad faith. Therefore, the Court cannot find any "clear error" in Magistrate Judge Wildeman's Order that would warrant modification or reversal.

## III.    Request for Continuance & Motion for Summary Judgment

Lowe's argues that it "would be prejudiced if it were not provided the opportunity to pursue a dispositive motion prior to trial." (Def.'s Mot. Reconsideration 14, ECF No. 110.) As this motion was pending, Lowe's filed a Motion for Partial Summary Judgment, (ECF No. 134). For the reasons that follow, that motion is now **denied**.

### A. Legal standard

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court is not a factfinder, so its role is "limited": it is not to "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Runkel v. City of*

*Springfield*, 51 F.4th 736, 742 (7th Cir. 2022) (quoting *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021)).

"Although the question of whether an act or omission constitutes gross negligence is generally a question of fact, the question may become one of law if 'the facts are undisputed and only a single inference can be drawn from those facts.'" *Miller v. Indiana Dep't of Workforce Dev.*, 878 N.E.2d 346, 356 (Ind. Ct. App. 2007) (quoting *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003)). "The question of punitive damages is ultimately a question of fact for the jury to decide." *Whitten v. Kentucky Fried Chicken Corp.*, 570 N.E.2d 1353, 1358 (Ind. Ct. App. 1991) (finding that summary judgment was inappropriate where there was not a "complete failure" of evidence to sustain punitive damages claim).

Lowe's cites *Juarez v. Menard, Inc.*, 366 F.3d 479 (7th Cir. 2004), for the proposition that "[w]hether the facts of a particular case justify an award of punitive damages is a question of law." (Def.'s Mot. Reconsideration 15, ECF No. 110 (purportedly quoting *Juarez*).) As Jenson points out, the quote in Lowe's brief does not appear anywhere in the case, and, especially given the lack of a pinpoint cite, the Court could not locate that quote. Rather, the Seventh Circuit merely upheld the district court's grant of summary judgment on the issue of punitive damages, finding that the plaintiff had "not offered any evidence from which a reasonable jury could find, by clear and convincing evidence, that [the defendant's conduct] constituted the type of conduct for which punitive damages could be awarded." 366 F.3d at 484.

### *B. Discussion*

Lowe's has not demonstrated that this case is devoid of factual disputes. Even disregarding the general rule that punitive damages is a jury question, there are still factual disputes that preclude summary judgment. For example, the frequency with which Johnson observed safety violations of the same type that caused the fertilizer bags to fall on Jenson is a material fact as it pertains to the issues of whether Lowe's conduct was grossly negligent and therefore whether punitive damages should be awarded. As established above, this constitutes a dispute that is for the jury—not the Court—to decide. *See Thorn*, 207 F.3d at 389 (honesty of deposition errata to be assessed by factfinder). Additionally, it is not resolved if and how Lowe's has dealt with similar claims that Jenson has alleged were brought against it. (*See* Pl.'s Opp. 10, ECF No. 115.)

Jenson has also raised the possibility that Lowe's own safety policy documents are inconsistent as to whether shrink-wrapping is always required or whether banding only will suffice. (*Id.* at 5 nn.3, 4.) In the Daily Safety & HazMat Review Form, a form used internally by Lowe's to document safety protocol violations, "Pallet not shrink wrapped" is a potential issue. (ECF No. 89-1 at 63.) Additionally, under "Pallet Integrity," the safety manual provides that "All palletized items must be fully shrink-wrapped from top to bottom." (*Id.* at 61.) However, the TRAPS presentation, which is part of Lowe's employees' safety training, states that the merchandise must be "shrink wrapped or banded to the pallet," (*Id.* at 56, 59), as does the safety manual in other portions, (*Id.* at 60). Notwithstanding whether or not the failure to follow a

company policy gives rise to liability, what to make of any discrepancies—i.e., whether it becomes of import that the photos from the day after the Incident did not show shrink wrap—is up to the jury.

Jenson's evidence does not "complete[ly] fail[]" to sustain a punitive damages claim. *Whitten*, 570 N.E.2d at 1358. Because there are factual disputes that must be evaluated by a jury, and that a supplemental dispositive motion will not resolve, the denial of the motion will not prejudice Lowe's. Summary judgment on punitive damages is not appropriate.

## IV.   Conclusion

The Court finds no clear error in Magistrate Judge Wildeman's Order allowing Jenson to amend her complaint. Lowe's Objection Under Rule 72(a) and Motion for Reconsideration, (ECF No. 110), is **denied**.

There are material factual disputes that are not appropriate for the Court to decide on the evidence presented. Therefore, Lowe's Motion for Partial Summary Judgment, (ECF No. 134), is **denied**.

Given that Lowe's filed a motion for partial summary judgment as the motion for reconsideration was pending, and that the motion is now denied, Lowe's request for a trial continuance is **denied as moot**.

**SO ORDERED.**

Date: 03/15/2024

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all counsel of record via CM/ECF